IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

NACOE BROWN   #34730-037
Plaintiff,
FCI Ray Brook
P.O. Box 900
Ray Brook, NY  12977
vs.

Case: 1:15-cv-00193
Assigned To : Leon, Richard J.
Assign. Date : 2/5/2015
Description: FOIA/Privacy Act

JURY TRIAL DEMANDED

DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Defendants,

The Plaintiff brings this action for injunctive, declaratory and monetary relief pursuant to the
Privacy Act of 1974 5 U.S.C. § 552 (a) et seg. the Federal Declaratory Judgment Act, 28 U.S.C.
§ 2201.

## JURISDICTION

1. This court has jurisdiction over the action pursuant to 5 U.S.C. §§ 552 (a) (g) (1), 552 (a)
   (4) (B), and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District Court under 5 U.S.C. § 552 (a) (g) (5), 552 (a) (4) (B),
   and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Nacoe Brown is a citizen of the United States.  Defendants Department of
   Justice, and Federal Bureau of Investigation (FBI) is an agency within the meaning of 5
   U.S.C. § 552 a (a) (1), and is in possession and/or control of records pertaining to Nacoe
   Brown.

## FACTS

4. On June 1, 2001, Mr. Brown was arrested and changed with violating Title 18 U.S.C. § 2113 (a) and (d) and 18 U.S.C. § 2.

5. Mr. Brown in September 2002 proceeded to trial by jury on four counts.

6. Assistant United States Attorney Jonathan P. Luna was tasked with prosecuting the case for the government.

7. After a nine day jury trial in the federal court house in the Northern District of Baltimore, Maryland the jury convicted Mr. Brown on three of the four counts to which he proceeded to trial on.

8. As part of the governments case in chief, $36,000 in U.S. currency was introduced as evidence at the trial.

9. According to the prosecution this U.S. currency had "Special markings and wrappings" demonstrating the currency was "Bank robbery proceeds", rather then just currency derived from elsewhere.

10. The government as part of their case in chief called alleged co-defendant Kevin Hilliard as a witness.

11. Mr. Hilliard testified that F.B.I. agents seized approximately $68,000 in U.S. currency from a safe at his home.

12. The jurors were told that some of this currency still had bank wrappers around the bundles and the jurors would have an opportunity to "examine" such during deliberations.

13. The jurors were told that they were going to send in "all the evidence" and copies of my instructions as well as the verdict sheets," (Trial Transcript, pp. 1572, 9-11) 15. This was said just prior to deliberations.

14. The court then stated, "I assume all the exhibits are in," (Trial Transcript, pp. 1576, 7-8).

15. Defense Counsel Ravenell engaged in conversation with Ms. Arrington who was the court clerk in reference to "lost exhibits," and that they had actually been found (Trial Transcript, pp 1576)

16. The jury requested that "all evidence be presented to them," in the jury. (Trial Transcript, pp. 1582)

17. A.U.S.A. Luna explained that certain items would not be available to jurors for examination. (Trial Transcript, 1592, 13-21).

18. The court then while instructing jurors on a handwritten note, explained that no currency would be sent to the jury room. (Trial Transcript, pp 1591-93)

19. Law enforcement shortly thereafter discovered that up to $36,000 (the key evidence in Brown's case) was missing. (Appendix A).

20. An investigation ensured related to the missing currency.

21. As a result of this stolen currency the lead prosecutor Jonathan P. Luna was placed under investigation.

22. A polygraph test was scheduled for Mr. Luna.

23. Prior to the scheduled test Assistant United States Attorney Jonathan Luna, who was under investigation related to the stolen currency was found dead, in Brecknock Township, Pennsylvania.

24. The Lancaster County Coroner ruled the death a homicide. 2 (Appendix B).

25. Luna had been stabbed 36 times and his throat had been slit.

26. There were also allegations that Luna's death was a suicide.

27. Luna's death prompted another investigation.

28. Nacoe Brown has requested ay and all information related to or part of the investigation related to the stolen evidence during his trial.

29. The evidence to which Brown sought related strictly to the Federal Bureau of Investigations investigation in reference to the stolen currency.

30. Mr. Brown has attempted to attain access to these specific FBI investigative documents since 2006 through the FOIA and Privacy Act. Despite all efforts, the FBI has not produced the documents to which Brown has sought. (Appendix C).

31. The FBI has erroneously contended that there is an ongoing investigation into Luna's death and therefore the records to which Brown seek are exempt.

32. The documents which Brown seeks do not relate to the investigation of Luna's death, but rather relate specifically to the stolen currency during Mr. Brown's trial at the federal courthouse in Maryland.

33. The investigation related to the stolen currency ended in February 2006, thus Brown is entitled to such.

34. These documents are needed to demonstrate that Mr. Brown was denied his constitution right to due process.

35. Such documents upon information and belief will also demonstrate that criminal activities including but not limited to felony offenses were committed during the course of Plaintiff's trial.

36. These documents will also demonstrate that both Brady and Jenecks violation occurred during the prosecution of the case, all in violation of Mr. Brown's fifth amendment right to due process, both during the trial, sentencing and appeal.

37. The FBI, its employees and officers, along with the Department of Justice, knew or should have know that their actions were improper, unlawful and/or in violation of the Privacy Act.

38. As a result of the FBI's violations, Mr. Brown has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, fear and continued incarceration.

39. Mr. Brown has exhausted all administrative remedies (Appendix D).

Wherefore, Plaintiff Nacoe Brown requests that the court award him the following relief: (1) Declare that the FBI and Department of Justice violated the Privacy and Freedom of Information Acts; (2) Order the FBI and DOJ to immediately disclose the requested records in there entireties to Nacoe Brown; (3) Award Nacoe Brown any actual damages under 5 U.S.C. § 552 a (g) (1) (c), (g) (4) (A), the exact amount of which is to be determined at trial but is not less than $1,000,000; (4) Award Plaintiff reasonable costs and attorney fees as provided in 5 U.S.C. § 552 a (g) (3) (B) and or (4) (B), 552 (a) (4) (E) and or 28 U.S.C. § 2412 (d); (5) Refer those officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552 a (i) (1); (6) Expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and grant such other relief as the court may deem just and proper.

2 - 2 - 2015

Respectfully submitted,

Nacoe Brown

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

---

NACOE BROWN
Plaintiff,


vs.

CA NO:
AFFIDAVIT



DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Respondent,

---

AFFIDAVIT OF NACOE BROWN

---

I Nacoe Brown, being duly sworn according to the law depose and say that I am the Plaintiff in the above entitled proceeding.

1. On June 1, 2001 I was arrested and charged in federal court with violations related to bank robbery.

2. I was represented by Attorney Kenneth Ravenell, the Government was represented by Assistant U.S. Attorney Jonathan P. Luna.

3. I proceeded to trial on four separate counts related to bank robbery in which the jury returned a verdict of guilty as to three counts.

4. Prior to the jury deliberations these were issues related to missing exhibits.  My attorney was told that all exhibits were found, and thereafter deliberation began.

5. Shortly thereafter it was discovered that a large sum of currency that was used in the Government's cases in chief was missing and/or stolen.

6. An investigation began into the theft of the U.S. currency (evidence in my case), in which A.U.S.A. Luna was a prime suspect.

7. This investigation began in 2002 and Mr. Luna was scheduled to take a polygraph test. Prior to the scheduled polygraph test Mr. Luna was found dead.

8. A.U.S.A. Luna had been stabbed 36 times and his throat had been slit, he had been found face down in shallow water, in Brecknock Township, Pennsylvania.

9. The FBI publicly stated that Mr. Luna's death was a suicide.

10. In 2006 the FBI closed the investigation related to the stolen evidence in my case, the U.S. currency. This investigation included interviews of the presiding judge as well as others in the U.S. Attorneys office, in the Northern District of Maryland.

11. I, personally sought any and all documents related to the investigation of the stolen evidence in my case from the FBI as well as the Department of Justice through both the Privacy Act as well as the Freedom of Information Act.

12. I was stonewalled by both agency's as their failure to disclose such information according to them was exempt based on a continuing investigation into the death of A.U.S.A. Luna.

13. The information to which I have sought is unrelated to the ongoing investigation into Mr. Luna's death, but rather related to the investigation into the stolen evidence during the course of my criminal trial. An investigation that concluded in 2006.

14. As a result of the investigation being closed in 2006, the FBI and Department of Justice are not exempt from turning over any and all documents related to the investigation that was conducted related to the stolen and/or missing evidence.

15. These documents are needed to demonstrate that I was denied my Fifth Amendment Right to Due Process during the course of the criminal proceedings, which include but are not limited to Brady violations, Jenecks violations, Prosecutorial Misconduct and the right to a fair trial.

16. I have exhausted all administrative remedies.

Nacoe Brown

Sworn to before me this _25th_ day of November 2014

NOTARY PUBLIC

JEAN MARIE DIEHL
Notary Public, State of New York
No. 01DI6260181
Qualified in Essex County
Commission Expires April 23, 2016